UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**KELLI WILLIAMS**   CASE NO. **09-11009**
    DEBTOR   CHAPTER 7

**TOWER CREDIT, INC.**
PLAINTIFF

V.   ADV. NO. **09-1083**

**KELLI WILLIAMS**
DEFENDANT

**MEMORANDUM OPINION**

This lawsuit turns on debtor Kelli Williams's alleged misstatements and omissions on her Tower Credit, Inc. ("Tower") loan application and whether Tower relied on those alleged misstatements and omissions in deciding to extend the loan.

Tower contends that its claim against Williams is not dischargeable under 11 U.S.C. §523(a)(2)(A) and (B). Because the evidence established that Tower did not reasonably rely on Williams's misrepresentations during the application process, the obligation is dischargeable.

**FACTS**

**The Tower Loan Application**

Kelli Williams visited Millennium Auto planning to buy an automobile on February 10, 2003. Because the Ford Probe she settled on was priced at $3,500 and Ms. Williams had only $1000 to apply to the purchase, a Millennium employee contacted Tower about making a loan to enable the sale. Ms. Williams, who had not previously done business with Tower Credit, accompanied the Millennium employee to Tower shortly afterward and applied to borrow $2,500

to pay the balance of the purchase price.[1] The next day Ms. Williams returned to Tower's office where she signed a promissory note as well as a two-page loan application. Her signature on the application fell below printed language vouching for the truth of all information on the application.[2] Ms. Williams later defaulted on the Tower loan and eventually filed chapter 7.

**The Debtor's Alleged Misstatements and Omissions**

The debtor's application listed a single creditor, Hibernia National Bank ("Hibernia"); Ms. Williams had two unpaid loans at Hibernia. Williams did not dispute at trial that she omitted three other debts from the application: a $21,000 debt to Bank One; a $3,000 obligation to the United States Attorney;[3] and an $800 debt to Enterprise Rent-a-Car ("Enterprise"). The debtor incurred all three of these debts before she borrowed from Tower.[4] Ms. Williams testified that she did not reveal the Bank One, U.S. Attorney or Enterprise debts to Tower because no one there asked her to list all her debts. She stated that she only spent perhaps fifteen minutes with Stephen Binning, Tower's president, when she went to the office to apply for the loan. She believed that the loan was a "done deal" and that she went to Tower's office after her first visit only to sign the loan documents.

Tower's loan application form included a section for calculating a customer's monthly budget, which Tower used to assess the borrower's ability to repay the loan. Williams's application reflected total net monthly income of $1,645, comprising $800 per month from K&B Construction ("K&B") and $200 she earned each week from free-lance landscaping. Ms.

---

[1] February 10, 2003 Tower credit application (Exhibit Tower 1).

[2] Promissory note (Exhibit Tower 2). Ms. Williams admitted that she signed both the loan application and the promissory note.

[3] The debtor's Schedule F describes the debt as one resulting from a "false statement to a firearms dealer." No other evidence established the nature of the debt to the United States Attorney.

[4] See Schedule F.

2

Williams's budget had no provision for rent or a house payment, nor did it include an automobile loan payment although the debtor testified that one of her Hibernia loans was for an automobile. Her budget did include a "revolving debit" payment (for a purpose not identified at trial), "other monthly payments," estimates for monthly utility and grocery bills, and a "miscellaneous" entry of ten percent of the debtor's monthly income.[5] These budget items totaled $1,088, leaving Williams $557 to repay the Tower loan. Binning testified that Ms. Williams reviewed the completed budget and the rest of the loan application before signing it.[6]

      Mr. Binning testified that he followed Tower's practice and obtained Ms. Williams's credit report when she applied for the loan but that it did not reflect that she owed any money to Bank One.[7]

      Binning testified that because Ms. Williams's budget determined whether she would be able to repay Tower, the debtor's failure to list all her debts influenced his decision to lend her money. He specifically insisted that he would not have made the loan to the debtor had he known about the Bank One[8] debt or Ms. Williams's obligation to the U.S. Attorney.[9]

      Binning acknowledged that the debtor told him she was separated from her husband – a detail her loan application disclosed. He testified that he could not specifically recall whether he

---

[5] The "other monthly payments" were the debtor's two monthly payments to Hibernia. The "miscellaneous" entry was Tower's allowance for sundry monthly expenses not itemized elsewhere in the borrower's budget.

[6] Ms. Williams insisted that she herself did not fill in the application and that Tower employees asked her only limited questions about it. Binning indeed conceded that he or another Tower employee completed the information on the budget with the debtor's assistance. Regardless, Williams's signature affirmed the application's accuracy and she cannot now disclaim its accuracy.

[7] Neither Tower nor Williams offered the credit report into evidence.

[8] Williams's monthly Bank One payment was $516. Transcript of September 13, 2009 meeting of creditors, p. 15, lines 3-6 (Exhibit Tower 3). The large monthly payment obligation to Bank One alone would have reduced Williams's available monthly income from $557 to $41.

[9] Binning testified that in addition to reducing funds available to meet obligations, the debtor's failure to pay the U.S. Attorney could result in her imprisonment and prevent her from paying Tower.

asked her if she was paying rent or other housing expenses, though he believed he *may* have questioned Williams about that when she applied for the loan. Adjusting Ms. Williams's budget to include funds for housing also would have reduced the money available to pay Tower and to meet the debtor's other obligations. The debtor testified at trial that she was *not* paying any rent when she applied for the Tower loan.

Finally, Binning stated that he had no reason to believe that Williams was not actually making $200 per week from landscaping as she had represented. According to Binning, had he known that Ms. Williams did not earn $200 a week from landscaping, he would have concluded that her available income would have been inadequate to repay Tower and so he would not have made the loan to her.

**The Debtor's Chapter 7 Petition**

Ms. Williams filed chapter 7 on July 7, 2009. At the September 13, 2009 meeting of creditors she acknowledged signing the schedules and verifying their accuracy.[10] Under questioning at the meeting, the debtor admitted that she borrowed money from Bank One in February 2002[11] and that she had incurred debts to Enterprise and the U.S. Attorney before she borrowed from Tower in 2003.[12] Ms. Williams also stated at the 341 meeting that in 2003 she

---

[10] Transcript of September 13, 2009 meeting of creditors, p.11, line 25; p. 12, lines 1-9 (Exhibit Tower 3).

[11] Transcript of September 13, 2009 meeting of creditors, p. 13, lines 21-24. The Bank One loan is also listed on the debtor's schedule F.

[12] Transcript of September 13, 2009 meeting of creditors, p.15, lines 22-25; p. 16, lines 1-18. The debtor testified at trial that she did not know about the Enterprise debt because it was on her former husband's credit card. Her testimony is not convincing because both the Enterprise debt and the debt to the U.S. Attorney are listed among the creditors on schedule F filed in her case.

4

was working only at K&B and not doing landscaping.[13]  Additionally, she testified that she was paying rent in 2003.[14]

## ANALYSIS

**A. Tower Failed to Prove That its Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(A)**

Tower's complaint alleges that the debtor's actions render her debt to Tower nondischargeable under 11 U.S.C. §523(a)(2)(A) which excepts from discharge any debt:

"for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ---

>  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's … financial condition …."

Section 523(a)(2)(A) applies to debts obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *Gen. Elec. Cap. Corp. v. Acosta*, 406 F.3d 367 (5th Cir. 2005), citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

To prevail under 11 U.S.C. §523(a)(2)(A), Tower must prove that: (1) the debtor made representations; (2) the debtor knew the representations were false when they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) it relied on the representations; and (5) it sustained losses as a proximate result of the representations.  *RecoverEdge L.P. v. Pentecost*, 44 F. 3d 1284, 1293 (5th Cir. 1995), citing *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).  Tower did not meet this burden.

---

[13]  Transcript of September 13, 2009 meeting of creditors, p. 21, lines 14-25; p. 22, lines 1-15.

[14]  Transcript of September 13, 2009 meeting of creditors, p. 23, lines 7-15.  Ms. Williams admitted that the 341 transcript accurately reflected her testimony that she was paying rent in February 2003.  She offered no convincing explanation for the discrepancy in her trial testimony on that point.

The evidence established that the debtor falsely represented to Tower that her only debts were the two loans from Hibernia, that she was making $200 per week doing landscaping work when she applied for the loan and that she was paying no rent at that time. Moreover, she knowingly signed the loan application giving Tower the false information to get the loan and knowingly warranted its truthfulness when the application was materially incorrect. "'When it is not disputed that a loan application was signed by the [d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect.'" *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992). The debtor's indifference to the accuracy of the application does not protect her because lack of care when signing loan documents indicates a reckless disregard for the accuracy of the information in the documents for purposes of 11 U.S.C. §523(a)(2)(A) and supports a finding that the debtor intended to deceive Tower. *Butski* at 195.

The debtor admitted under oath at the meeting of creditors that she borrowed money from Bank One in February 2002 and that she had incurred the debts to Enterprise and the U.S. Attorney before she applied for the Tower loan. She also admitted that she was only working at K&B and not landscaping freelance in her spare time when she applied to Tower. Finally, Ms. Williams confirmed she was paying rent when she did business with Tower. None of this information was disclosed on the debtor's loan application or to any Tower employee when she applied for credit. In fact, Ms. Williams's trial testimony about her landscaping work and her payment of rent directly contradicted her earlier testimony at the 341 meeting. All of this evidence supports a finding that Ms. Williams intended to deceive Tower. Moreover, the debtor's claim that she did not give Tower the omitted information because no one from Tower

6

asked her and because she thought that the loan was a "done deal" and she needed only to sign the loan documents where instructed to, is not credible, especially in light of her signed verification warranting the accuracy of the loan application.

Merely establishing that the debtor misled it is insufficient to entitle Tower to a declaration that Williams's debt to it is nondischargeable. To render its claim non-dischargeable under section 523(a)(2)(A), Tower also must prove that it *justifiably* relied on the debtor's misrepresentations in deciding to extend credit. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Justifiable reliance is gauged by "'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Vann*, 67 F.3d 277, 288 (quoting *Prosser & Keaton on Torts* at 751). "'It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation on his own.'" *Id*. at 283 (quoting *Prosser & Keaton on Torts* at 752).

Tower argues that it relied on information the debtor gave it in deciding to make the loan and would not have loaned her the money had it known about the Bank One loan, the Enterprise and U.S. Attorney debts, that Ms. Williams's only income was her salary at K&B, or that she was paying rent. However, Tower did not establish that it *justifiably* relied on the contents of the debtor's loan application. The application's failure to list any expense for shelter for the debtor, whether rent or some other payment or explanation of why she had no housing expense, should have led Binning to inquire into her living arrangements. Binning's testimony at trial on this point was vague: though he testified that he *may* have questioned her further regarding her

7

separation and housing expense, he could not specifically recall doing so. The lack of any detailed evidence on that point is not surprising, given that the loan application process was brief – taking between the fifteen minutes Ms. Williams recalled and the 45 minutes Binning stated the process usually took. Even though the omission of the large Bank One debt from the budget may have ultimately prevented Tower from making the loan, the evidence supports a conclusion that Tower's review of the debtor's loan application should have led it to further questioning about the debtor's living expenses, which in turn would have cast doubt on the veracity of all the information the debtor gave to get the loan. Binning's reliance on the debtor's statement that she had no housing costs when she applied for the loan was unjustified.

### B. Tower also Failed to Prove that the Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(B)

Bankruptcy Code section 523(a)(2)(B) renders nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by —

    (B) use of a statement in writing —

        (i)    that is materially false;

        (ii)   respecting the debtor's or an insider's financial condition;

        (iii)  on which the creditor to whom the debtor is liable for such…credit reasonably relied; and

        (iv)  that the debtor caused to be made or published with intent to deceive."

*Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995). A written statement is materially false under 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *Norris*, 70 F.3d at 30, quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991).

In contrast to section 523(a)(2)(A), a declaration of nondischargeability under section 523(a)(2)(B) requires proof that the creditor *reasonably* relied on the debtor's false statements:

> The reasonableness of a creditor's reliance…should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

Tower proved that the debtor's loan application contained materially false statements about her financial condition. She admitted under oath at trial and again at the meeting of creditors that she borrowed money from Bank One and had a debt to the U.S. Attorney before she applied for the Tower loan.[15] The debtor admitted at the meeting of creditors that she was not doing landscaping work in February 2003 and that she was paying rent at that time, two points on which her trial testimony was inconsistent. Her failure to disclose these significant aspects of her finances to Tower when she applied to borrow money based on her claim that no one with Tower specifically asked her about them does not make her statements any less untruthful, especially in light of her signed verification of the accuracy of the loan application. Ms Williams adopted the false information and intentionally misrepresented her financial condition to Tower.[16]

---

[15] Ms Williams maintained at trial that she did not know about the Enterprise debt that was on her former husband's credit card.

[16] *See Cadle Co. v. Orsini*, 2007 WL 1006919 at *5 (Bankr. E.D. Tex. 2007) (citation omitted) ("[a]s long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met.")

As blameworthy as Ms. Williams may be for misrepresenting her finances to Tower to buy a car, her misstatements alone do not entitle Tower to judgment because Tower failed to prove that it reasonably relied on the debtor's misrepresentations.

No evidence established that Ms. Williams had dealt with Tower before her 2003 loan application and so Tower could not reasonably have trusted that Ms. Williams had given it accurate information. As important, Tower's failure to inquire further into Ms. Williams's failure to list any housing expense even though she was separated from her husband – a "red flag" – would have caused a prudent lender to investigate the borrower's statements. Binning's testimony that he may have inquired into the debtor's housing expenses was vague, a marked contrast to his confident assertion, in response to his own counsel's questions, that he would have denied Williams's loan application had he known the debtor was paying rent because it would have left her without enough money to repay Tower after meeting her other obligations. Tower did not reasonably rely on information Ms. Williams's gave it to calculate her budget for the loan.

## CONCLUSION

Tower Credit failed to prove that Kelli Williams's debt to it is nondischargeable under both 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(B). Accordingly, the debt is dischargeable.

Baton Rouge, Louisiana, July 7, 2010.

<u>**s/Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE